IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                        )<br>            Plaintiff,                     )<br>                                                        )<br>    vs.                                            )<br>                                                        )<br>DAVID MC INTYRE and               )<br>KATHI MC INTYRE,                    )<br>                                                        )<br>            Defendants.                 ) | 8:09CR62<br><br>FINDINGS AND<br><br>RECOMMENDATION |

    This matter is before the court on the motions to suppress filed by defendants David McIntyre (Filing Nos. 15 and 34) and Kathi McIntyre (Filing No. 56). The McIntyres are charged in a Superseding Indictment (Filing No. 37) with a conspiracy to manufacture marijuana (Count I) in violation of 21 U.S.C. § 846, the manufacture of marijuana (Count II) in violation of 21 U.S.C. § 841(a)(1), and a forfeiture count (Count III) pursuant to 21 U.S.C. § 853. The McIntyres seek to suppress evidence obtained as a result of a county attorney subpoena (Filing No. 34) and evidence seized in a search of the McIntyres' residence on January 16, 2009, as well as evidence obtained pursuant to thermal imagery search warrants of the McIntyres' residence on January 14 and 15, 2009 (Filing Nos. 15 and 56). Previously, the court denied the McIntyres' motions (Filing Nos. 15 and 56) for a ***Franks*** hearing (Filing No. 57) and the motion for reconsideration (Filing No. 59; Filing No. 62 - Text Minute Entry).

    The court held a hearing on the motions on September 10, 2009. David McIntyre was present for the hearing along with his counsel, James K. McGough, and Kathi McIntyre was present with her counsel, Assistant Federal Public Defender Jessica P. Douglas. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. During the hearing, the court heard the testimony of Investigators Jason Sears (Investigator Sears) and Douglas Kelley (Investigator Kelley) of the Nebraska State Patrol (NSP), and Daniel S. Leise (Mr. Leise). The court received into evidence numerous exhibits. Among the exhibits are Exhibits 1 through 31 of which the court took judicial notice as they were attached to Filing No. 27. The court further received in evidence

thermal imagery DVDs (Exhibits 4A and 7A). Also, additional photographs of the residence and garage were received into evidence (Exhibits 32-37). The parties requested to submit post-hearing briefs. The transcript (TR.) was filed on September 25, 2009 ([Filing No. 69](#)). Post-hearing briefing was completed on October 19, 2009.

## FINDINGS OF FACT

On December 8, 2008, Investigator Sears was investigating a missing person case and contacted David McIntyre because a person of interest in the missing person case had sold a trailer to David McIntyre and the trailer could have been used to dispose of a vehicle involved in the missing person case (TR. 17; Exhibit 2 -¶2). Investigator Sears and NSP Trooper Lueders encountered David McIntyre in the driveway outside McIntyre's residence in Dodge County at 735 North Irving Street, Fremont, Nebraska (TR. 24; Exhibit 2-¶2). Investigator Sears engaged David McIntyre in conversation about the trailer and McIntyre invited the officers into the residence to look for the title to the trailer (TR. 25; Exhibit 2-¶2). As Investigator Sears walked by the vehicle parked in the driveway, Investigator Sears noted a pen tube in the ash tray (TR. 25). Investigator Sears described the pen tube as a "tooter" used to ingest controlled substances (TR. 25; Exhibit 2-¶2). While inside the residence, Investigator Sears smelled a strong odor of raw marijuana and began to have an allergic reaction to the odor (TR. 28; Exhibit 2-¶2). Investigator Sears noted David McIntyre was notably nervous when talking about the trailer and McIntyre's hands were shaking when handing the trailer title papers to Investigator Sears for examination (Exhibit 2-¶2). David McIntyre told Investigator Sears the trailer was currently loaded with wood and located at David McIntyre's cabin in Crofton, Nebraska, or at Mark Narke's residence (Exhibit 2-¶2). David McIntyre told Investigator Sears he (McIntyre) only visited the cabin one or two weekends during the month (Exhibit 2-¶2). David McIntyre placed a telephone call to a person named Mark Narke and Investigator Sears overheard the conversation since the volume on the telephone was turned up very loud (Exhibit 2-¶2). David McIntyre told Narke to get the trailer to Narke's residence in Santee, Nebraska, unload the wood, and have the trailer at Narke's residence before the NSP Investigators would arrive (Exhibit 2-¶2).

On December 8, 2008, Investigator Sears and Trooper Lueders drove to Santee, Nebraska, and met with Narke at his residence (Exhibit 2-¶3). There the officers inspected the trailer which was parked by a shed (Exhibit 2-¶3). The trailer was empty and Narke stated he was unaware of anything being loaded on the trailer (Exhibit 2-¶3). After being allowed to inspect the trailer and buildings on the property, the officers found nothing unusual (Exhibit 2-¶3).

At approximately 7 a.m. on January 9, 2009, Investigator Sears and Cedar County Sheriff Koranda drove past McIntyre's house, 26 Circle Drive, Grand View Estates, Kohles Edition, in Crofton, Knox County, Nebraska (Exhibit 2-¶4 ). The officers were investigating whether there was a garage at the residence and if such a garage could hold a pickup which was an object in the missing person investigation (TR. 30). The officers observed a gray Oldsmobile, with a county 5 license plate, backed up to the garage door (Exhibit 2-¶4). At one o'clock in the afternoon, the officers returned to McIntyre's residence in Crofton and noted the gray Oldsmobile was gone (Exhibit 5-¶4). The officers parked in the driveway and got out their car (Exhibit 2-¶4). Investigator Sears noted a piece of trim hanging down in an unusual fashion, the wood siding near the garage door was rotted away, a small hose was protruding from under the garage door, and a strong odor of raw marijuana (Exhibit 2-¶4). The odor of marijuana caused a similar allergic reaction in Investigator Sears as when he was at McIntyre's residence in Fremont (Exhibit 2-¶4; TR. 34-35). The officers observed a light and television on inside the house and quickly left the area (Exhibit 2-¶4; TR. 35).

Investigator Sears checked the Nebraska Criminal Justice System records and found that David McIntyre had been arrested for "Dangerous Drugs" in June of 1981, and in October 2003, he was arrested for a probation violation for possession of drugs and possession of narcotic equipment (Exhibit 2-¶ 6). Based upon the smell of raw marijuana coming from McIntyre's residence and his past drug charges, Investigator Sears decided to obtain McIntyre's electricity usage records (TR. 50).

Investigator Sears called the Cedar-Knox Public Power District and spoke with Daniel Leise, the General Manager, and asked for the electricity usage records for 26 Circle Drive in Crofton, Nebraska (TR. 49; 87). Mr. Leise told Investigator Sears a

3

subpoena was needed to obtain the records (TR. 49; 87). Investigator Kelley contacted the Knox County Attorney and obtained a County Attorney's subpoena for electricity usage records from the Cedar Knox Public Power District for McIntyre's residence at 26 Circle Drive in Crofton (TR. 50; Exhibit 2-¶5; Exhibit 1). Investigator Sears took the subpoena to Mr. Leise at Cedar-Knox Public Power District in Hartington, Nebraska, and provided him with a copy (TR. 20; 51). Mr. Leise provided Investigator Sears with a single sheet of electrical usage for the past three years for 26 Circle Drive in Crofton (TR. 20; 51; 89). The electrical usage document provided showed a huge spike in electrical usage for the November 2008 period (Exhibit 2 - last page). Mr. Leise told Investigator Sears the usage seemed to be higher than other homes in the area (TR. 20-21). Mr. Leise told Investigator Sears the single sheet of records were those that went back to the implementation of the new computer system and if further records were needed, Mr. Leise could get them by hand (TR. 21-22). Investigator Sears made no further requests (TR. 52; 89).

On January 14, 2009, Investigator Kelley, citing Investigator Sears's allergic reaction to the smell of raw marijuana at both of McIntyre's residences, McIntyre's drug arrest history, the electrical usage record, the "tooter" observed in McIntyre's truck, and the utility of thermal imagery to indicate the presence of marijuana grow operations, applied for and submitted an affidavit for a thermal imaging warrant for McIntyre's residence at 26 Circle Drive, Crofton, Nebraska (Exhibit 2). A Knox County Judge, Judge Krepela, issued the thermal imaging warrant on January 14, 2009 (Exhibit 3). That evening, Investigator Kelley executed the warrant and made a return to the court together with a recording of thermal imagery (Exhibits 4 and 4A).

On January 15, 2009, Investigator Kelley sought and obtained a second warrant to conduct thermal imagery of 26 Circle Drive in Crofton (Exhibits 5 and 6). Investigator Kelley testified he did so to get representative comparisons of similar residences in the area and explained his reasons to Judge Krepela but did not include such matters in the application and affidavit, which were identical to the application and affidavit from January 14th (TR. 77-78; Exhibit 5). Investigator Kelley executed the warrant on the evening of January 15, 2009, and made a return to the court together with a copy of the thermal imagery (Exhibits 7 and 7a).

Based upon the information previously set forth in the affidavits for the thermal imagery warrants and the results of the thermal imagery of 26 Circle Drive in Crofton, Investigator Kelley applied for a search warrant on January 16, 2009, for the premises of 26 Circle Drive in Crofton (TR. 78, Exhibit 11). The warrant was issued on January 16, 2009 (Exhibit 12). The warrant was executed and a marijuana grow operation was discovered and seized at the premises (TR. 79; Exhibit 13 p. 4).

On January 16, 2009, NSP Investigator Mark Plowman signed an affidavit and application for a search warrant for McIntyre's residence at 735 North Irving in Fremont, Nebraska, citing the facts previously stated in the thermal imagery affidavits and setting forth the results of the search of McIntyre's residence in Crofton (Exhibit 13). The search warrant was issued as requested (Exhibit 14).

## LEGAL ANALYSIS

Both McIntyre defendants seek to suppress the county attorney subpoena that was used to obtain usage records from the Cedar-Knox Public Power District and argue any evidence obtained following the subpoena should be suppressed pursuant to *Wong Sun* as fruit from the poisonous tree. Additionally, both McIntyre defendants argue officers lacked probable cause to obtain the thermal imagery warrants for the Crofton location, then exceeded the scope of the warrants by conducting such searches on two dates, of multiple residences, and of the back and sides of the Crofton residence. Similarly, the defendants contend any evidence obtained following the thermal imagery warrants should be suppressed pursuant to *Wong Sun* as fruit from the poisonous tree

### A. Standing

As an initial matter, evidence in the record fails to support standing in several respects. To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Boyster*, 436 F.3d 986, 992 (8th Cir. 2006). The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real

or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978); **see also** *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *United States v. Barragan*, 379 F.3d 524, 529-30 (8th Cir. 2004) (**quoting** *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

The Eighth Circuit has recognized that:

> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized. A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*United States v. Stallings*, 28 F.3d 58, 60 (8th Cir. 1994) (internal citations omitted). "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Barragan*, 379 F.3d at 529. Therefore, the court "must first determine whether [the defendant] had a legitimate expectation of privacy in the area searched or the item seized." *Gomez*, 16 F.3d at 256. The Eighth Circuit has explained:

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*Id.*

First, the defendants argue the officers lacked authority to conduct thermal imaging of residences near the Crofton location for comparison purposes. The defendants provide the court no evidence they have standing, or any expectation of privacy in those residences. Second, the evidence in the record lacks any support for Kathi McIntyre's challenge to either the subpoena for Cedar-Knox Public Power District usage records or the thermal imaging warrants. As Kathi McIntyre notes, she was not the subject of the investigation. Furthermore, her name does not appear on the Cedar-Knox Public Power

6

District records, nor does she make a claim of ownership in the Crofton location. Accordingly, Kathi McIntyre appears to lack standing, or any expectation of privacy with regard to either the subpoena at issue or the warrants related to the Crofton location. In any event, the court will evaluate Kathi McIntyre's arguments along with David McIntyre's arguments below.

**B.     Cedar-Knox Public Power District Subpoena**

The defendants contend use of the subpoena at issue to obtain Cedar-Knox Public Power District usage records violated their Fourth Amendment rights. The defendants argue a search warrant was required to obtain the usage records. Alternatively, the defendants argue the subpoena used was flawed requiring suppression.

The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV*; **see** *United States v. Ameling*, 328 F.3d 443, 447 (8th Cir. 2003) (Fourth Amendment applies to the states through the Fourteenth Amendment.). "[T]he Fourth Amendment does not require the [officers] 'always be correct, but that they always be reasonable.'" *United States v. Hudspeth*, 518 F.3d 954, 958 (8th Cir. 2008) (**quoting** *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)). "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). Nonetheless,

> the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*United States v. Miller*, 425 U.S. 435, 443 (1976) (regarding bank records); **see also** *United States v. Hamilton*, 434 F. Supp. 2d 974, 979 (D. Or. 2006) (regarding employment and power utilities records). The *Miller* and *Hamilton* courts reasoned an

7

individual has no legitimate expectation of privacy in information voluntarily exposed during the ordinary course of business to a business and its employees. **See** *United States v. Miller*, 425 U.S. 435, 443 (1976); *Hamilton*, 434 F. Supp. 2d at 979; **see also** *United States v. Moore*, 943 F.2d 884, 888 (8th Cir. 1991) (warrantless search of package constitutionally valid where officer's search did not exceed scope of the initial private party search).

David McIntyre conveyed his utility use information to a third party recipient, Cedar-Knox Public Power District. Because David McIntyre had already revealed the information to a third party, neither he nor anyone else had a legitimate expectation of privacy in the information. Accordingly, the information itself here, business records, is of a different nature than the information about internal temperatures suppressed in *Kyllo v. United States*, 533 U.S. 27 (2001) (holding warrantless use of thermal imaging device violated Fourth Amendment). Moreover, contrary to the defendants' assertions, Neb. Rev. Stat. § 70-101 does not supply the requisite expectation of privacy. Under Neb. Rev. Stat. § 70-101, certain information, not sought or supplied here, shall be furnished by a utility company to the county attorney upon request for limited use, such as collecting child support. The plain text of Neb. Rev. Stat. § 70-101 reveals the statutory section does not apply to utility usage information or criminal drug investigations. For these reasons, Investigator Sears did not need a warrant supported by probable cause to acquire David McIntyre's utility use records.

Absent the necessity of a warrant, the defendants argue the subpoena used to obtain the utility use records was deficient. Specifically, the subpoena issued by the Knox County Attorney contained a partial criminal case number and caption for David McIntyre although no criminal case had been opened; and referenced a civil subpoena statute, Neb. Rev. Stat. § 25-1273, and civil discovery Rule 34A, as authority, but was not served in compliance with those provisions. Regardless of these issues, the county attorney has subpoena power, under the circumstances present here, pursuant to Neb. Rev. Stat. § 2,112. Specifically, such statute provides that "any county attorney may . . . require the production of records . . . which constitute or contain evidence relevant or material to the investigation or enforcement of the laws of this state when it reasonably appears that such

8

action is necessary and proper." Neb. Rev. Stat. § 2,112. The court finds the officer's investigation into David McIntyre's utility use records, even if lacking probable cause at that time, fell within the purview of the subpoena statute's grant of authority. Accordingly, assuming Investigator Sears violated state law when obtaining the records, the court concludes no Fourth Amendment violation occurred. **See** *United States v. Cote*, 569 F.3d 391, 393 (8th Cir. 2009) (noting "[e]vidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because state law was violated.").

### C.     Sufficiency of the Affidavit

The defendants argue any information obtained based on the search warrants at issue in this case should be suppressed. Generally, the defendants assert the thermal imaging warrants and residence search warrant lacked probable cause. Additionally, the defendants assert the thermal imaging warrants were executed outside the scope of their authority. Independently of the validity of the subpoena, the defendants contend the thermal imaging search warrants lacked probable cause because the subpoenaed information was not reliable, i.e., an error existed in the information and the information was without corroboration. Further, the affidavits failed to contain information comparing David McIntyre's utility usage to "normal" usage and whether David McIntyre's utility usage was consistent with illegal or innocent conduct.

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, *Search & Seizure* § 3.7(d) at 412 (4th ed. 2004). As the Supreme Court stated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

9

*Id.* Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Jeanetta*, 533 F.3d 651, 654 (8th Cir. 2008). "Probable cause has been shown if the warrant application and affidavit describe circumstances showing 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Robinson*, 536 F.3d 874, 877 (8th Cir. 2008) (**quoting** *Gates*, 462 U.S. at 238). The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." [*Gates*, 462 U.S. at 238]. When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), **cert. denied**, 459 U.S. 1201 (1983). **Affidavits must be read in "a common-sense and realistic fashion,"** *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir. 1988) (**citing** *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). "Deference is accorded an issuing magistrate's probable cause determination . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978).

*United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added).

Based on the four corners of the affidavits before the court, there remained a fair probability that contraband or evidence of a crime will be found at the Crofton location. **See, e.g.**, *United States v. Charles*, 290 F. Supp. 2d 610, 618 (D. V.I. 1999) (noting plain smell of marijuana supplied the probable cause for residence search warrant). In addition to, or despite, the thermal imaging and subpoenaed records, Investigator Sears observed David McIntyre's unusual and extremely nervous behavior on December 8, 2008, a pen tube that may have been used to ingest controlled substances in the ash tray of a vehicle in McIntyre's driveway, and a strong odor of raw marijuana at McIntyre's Fremont

residence. Additionally, on January 9, 2009, Investigator Sears again smelled a strong odor of raw marijuana outside the Crofton location garage and a small hose coming out from under of the garage door. On January 13, 2008, Investigator Kelley discovered information about David McIntyre's criminal history which included possession of drugs and narcotic equipment. On January 16, 2009, Investigator Kelley obtained the search warrant, which was executed shortly thereafter.

Furthermore, the court has found above the subpoenaed information should not be excluded from the probable cause analysis. Similarly, the court does not find the actions of the searching officers to be in flagrant disregard of the scope of the thermal imaging warrants. See *Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984); *United States v. Beck*, 122 F.3d 676, 679-80 (8th Cir. 1997). Accordingly, such information should not be excluded from the probable cause analysis. Given all the circumstances set forth in the affidavit there was a fair probability that contraband or evidence of a crime will be found at the Crofton location. Thus, the defendants' motions to suppress should be denied.

### D.     Good Faith

Even assuming *arguendo*, that probable cause was lacking in sufficiency, the ***Leon*** good faith exception would allow the admissibility of the evidence seized. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court carved out an exception to the exclusionary rule by determining that evidence which would otherwise be inadmissible because the warrant was invalid would nonetheless be admissible if the evidence was obtained by law enforcement officers who were acting in reasonable good faith reliance upon the search warrant issued by a neutral and detached magistrate. This good faith exception is equally applicable to warrants that violate the particularity requirement of the Fourth Amendment. *Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984). The Supreme Court found that reliance on an invalid search warrant would not be reasonable if:  (1) the affidavit included information the officer knew was false or would have known to be false except for the officer's reckless disregard for the truth and such information misled the issuing magistrate; (2) the issuing magistrate abandoned a neutral and detached role; (3) the warrant was based on an affidavit with so few indicia of probable

cause that an objective belief in its validity would be unreasonable; and (4) the warrant itself was so facially deficient that the executing officers could not rely upon its validity. *Leon*, 468 U.S. at 923; **see** *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). None of those exceptions apply in this case. Accordingly, the motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

1. David McIntyre's motion to suppress (Filing Nos. 15 and 34) be denied; and
2. Kathi McIntyre's motion to suppress (Filing No. 56) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of these Findings and Recommendations. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 11th day of December, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

12