## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:09CR62 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DAVID MCINTYRE and | ) | |
| KATHI MCINTYRE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the objections filed by the Defendant David McIntyre (Filing No. 78) and by the Defendant Kathi McIntyre (Filing No. 76) to the Magistrate Judge's: (1) oral order (Filing Nos. 61, 62) denying the Defendants' motion for reconsideration (Filing No. 59) of the Magistrate Judge's previous order (Filing No. 57) denying a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978); and (2) findings and recommendation (Filing No. 75) denying the motions to suppress (Filing Nos. 15, 34) filed by the Defendant, David McIntyre, and the motion to suppress (Filing No. 56) filed by the Defendant, Kathi McIntyre.

### FACTUAL BACKGROUND

In his Memorandum and Order, Judge Thalken set out a detailed factual summary. Briefly, on December 8, 2008, Nebraska State Patrol ("NSP") Investigator Jason Sears and Nebraska State Trooper Lueders contacted the Defendant, David McIntyre ("McIntyre"), outside his Fremont, Nebraska, residence during their investigation of a missing person case. A person of interest sold a trailer to McIntyre that might have been used to dispose of a vehicle relating to the missing person case. While walking past a vehicle in the driveway, Investigator Sears noticed a pen tube in the ashtray, which he thought was a

"tooter" used to ingest controlled substances.  Inside the residence, Investigator Sears smelled a strong odor of raw marijuana and had an allergic reaction to the odor.  McIntyre was nervous, and his hands shook.  McIntyre said the trailer was loaded with wood and was at his cabin in Crofton, Nebraska, or at Mark Narke's residence.  McIntyre called Narke and told him to get the trailer to Narke's residence in Santee, Nebraska, unload the wood, and have the trailer at Narke's residence before NSP officers arrived.  On December 8, 2008, Investigator Sears and Trooper Lueders went to Narke's residence and saw nothing unusual.

On January 9, 2009, at approximately 7:00 a.m., Investigator Sears and Cedar County Sheriff Koranda drove past McIntyre's Crofton residence.  They saw an Oldsmobile backed up to a garage.  When they returned at 1:00 p.m. the Oldsmobile was gone.  The officers got out of their car, and Investigator Sears saw a couple of unusual things when looking at the garage, including a hanging shingle as well as a small hose protruding from under the garage door.  Investigator Sears smelled a strong odor of raw marijuana near the garage, and the smell caused him to suffer symptoms that he described as an allergic reaction.  Investigator Sears ran McIntyre's record and found two prior drug-related arrests.  Based on the instances of smelling raw marijuana and McIntyre's criminal history, Investigator Sears decided to obtain McIntyre's power usage records.  A subpoena was needed for the Crofton records.  NSP Investigator Douglas Kelley obtained a subpoena and received records for the Crofton property, which showed a huge spike in electrical usage

2

for November 2008.[1]  The general manager of the public power district told Investigator Sears that McIntyre's usage seemed higher than that of neighboring properties.

On January 14, 2009, a Knox County judge issued a thermal imaging warrant for McIntyre's Crofton residence after Investigator Kelley presented a search warrant affidavit referring to Investigator Sears's allergic reactions from smelling raw marijuana at both of McIntyre's residences, McIntyre's drug arrest history, the "tooter," and information regarding the use of thermal imaging in locating marijuana-growing operations.  The warrant was executed and returned with a recording of thermal imagery showing more electrical usage in the garage than in the living areas of the Crofton residence.

On January 15, 2009, Investigator Kelley obtained a second warrant to conduct thermal imagery.  On its face, the warrant was for McIntyre's Crofton residence. Investigator Kelley testified that his purpose was to obtain representative comparisons of readings from other residences in the area.  Investigator Kelley also testified that, although this information was not included in the application and affidavit that mirrored the January 14, 2009, application and affidavit, he told the issuing judge about his wish to obtain information from nearby homes for comparison purposes.  This warrant was executed and returned with a recording of thermal imagery showing that in the neighboring residences the usage was higher in the living areas as opposed to the accompanying garages.

Based on the information set out in the thermal imagery search warrant affidavits and the thermal imagery obtained as a result of the warrants, on January 16, 2009, a

---

[1]This apparent spike, however, was later shown to be inaccurate, as the reported number actually reflected usage for November and December 2008.

search warrant was issued for a search of McIntyre's Crofton residence.  In executing the warrant, a marijuana growing operation was seized.

A search warrant was also issued for McIntyre's Fremont residence on January 16, 2009.  No evidence was found during execution of the warrant, and this warrant is not a subject of these proceedings.

Judge Thalken denied the Defendants' request for a *Franks* hearing.  Also, he concluded that the Defendants do not have standing to contest the thermal imaging of the neighboring residences near McIntyre's Crofton home and, moreover, that the Defendant, Kathi McIntyre ("Ms. McIntyre"), lacks standing to challenge the subpoena for McIntyre's electric usage records and the thermal imaging warrants.  Assuming, however, for the sake of argument, that the Defendants have standing to contest the searches of those residences, Judge Thalken concluded: a warrant was not needed to obtain McIntyre's utility use records; even if Investigator Sears violated state law in obtaining McIntyre's utility use records, no Fourth Amendment violation occurred; the search warrant affidavits submitted in support of the applications for warrants for the thermal imaging and McIntyre's Crofton residence contained sufficient probable cause to support their issuance; and, even assuming that probable cause did not exist with respect to the thermal imaging or Crofton residence, the good faith exception set out in *United States v. Leon,* 468 U.S. 897 (1984) applied.  Therefore, Judge Thalken recommends that the Defendants' motions to suppress be denied.

I.      *Franks Hearing*

A district court may set aside any part of the magistrate judge's order, on a non-dispositive matter, shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

Defendants allege that the applications for the search warrant of David McIntyre's Crofton cabin and the two warrants for thermal imagery searches of the cabin included false statements made intentionally or with a reckless disregard for the truth.  Specifically, Defendants refer to a statement that the affiant learned that the kilowatt usage for the property was unusually high for November of 2008.[2]   Defendants also argue that information regarding investigators' desire to obtain thermal images of neighboring properties for comparison with similar information already obtained from the cabin was orally stated to the issuing judge but omitted from the affidavit.  Defendants also argue that the statements in the affidavits regarding an allergic reaction experienced by Investigator Sears of the Nebraska State Patrol upon smelling raw marijuana inside David McIntyre's Crofton cabin and outside his garage on the Crofton property are false, because no evidence was presented indicating that Investigator Sears suffers from a diagnosed allergy.  Finally, Defendants argue that the shingle hanging down and the hose protruding from the garage were not in plain view.

To obtain a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978), Defendants must: 1) make a "substantial preliminary showing" that the affidavit contains false information deliberately or in reckless disregard for the truth; and 2) the information is

_____

[2]The number attributed to November of 2008 actually included the usage for November and December of 2008.

necessary for a finding of probable cause. *United States v. Kattaria,* 553 F.3d 1171, 1176 (8th Cir. 2009), *cert. denied,* 78 U.S.L.W. 3320 (Nov. 30, 2009) (No. 09-7274).  The same analysis applies to omissions of fact. The defendant must show: (1) facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.  *United States v. Reinholz,* 245 F.3d 765, 774 (8th Cir. 2001); *United States v. Gladney,* 48 F.3d 309, 313 (8th Cir.1995).  This "substantial preliminary showing" is "not lightly met."  *United States v. Hively,* 61 F.3d 1358, 1360 (8th Cir. 1995).  If the affidavit is sufficient to establish probable cause with the false material removed or with the omitted material included, no evidentiary hearing is required.  *United States v. Crook,* 936 F.2d 1012, 1014 (8th Cir. 1991).   Probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

### 1.    False Information

If the allegedly false information is excluded from the affidavits, the affidavits describe the following: the presence of a pen tube (indicative of controlled substance use) in McIntyre's vehicle; the smell of raw marijuana inside the cabin; McIntyre's nervousness and shaking hands while talking with Investigator Sears; events surrounding the temporary presence of a vehicle parked backed up to the garage at 7:00 a.m.; the smell of raw marijuana outside the garage; McIntyre's prior controlled substance arrests; and information that in the officer's experiences, garages are used for marijuana manufacturing. This remaining information clearly supports a finding of probable cause.

6

### 2.      Omissions

Defendants argue that information regarding investigators' desire to obtain thermal images of neighboring properties for comparison with similar information obtained from the cabin, as well as general information regarding thermal imaging, was orally stated to the issuing judge but omitted from the affidavit.  However, Defendants failed to show that the information in question was omitted "with the intent to make, or in reckless disregard of whether [it] make[s], the affidavit misleading."  Defendants also have not shown that if the information were added to the affidavit, it could not support a finding of probable cause.

### 3.      Leon Good Faith Standard

Defendants argue that investigators relied on numerous pieces of extrinsic evidence in executing the warrant.  For example, Defendants argue that the officers relied on "conjecture, hunch, unsubstantiated details, and the allegations of unverified allergies." (Filing No. 76, ¶ 5; Filing No. 78, ¶ 5.)  While the Court finds a *Leon* analysis unnecessary, if probable cause did not support the issuance of the search warrant the Court concludes that officers acted in good faith reliance on the search warrant and, therefore, the *Leon* good faith exception to the exclusionary rule would apply.  *United States v. Leon,* 468 U.S. 897, 922-23 (1984).

### 4.      Conclusion

For the reasons discussed, a *Franks* hearing need not be held.  Judge Thalken's order denying the *Franks* hearing and the Defendants' motion for reconsideration of that order are not clearly erroneous or contrary to law, and they are affirmed.

## II.    Findings and Recommendation

The district court must review de novo any part of the magistrate judge's findings and recommendation to which a party objects, and the court may accept, reject, or modify the findings or recommendation.  28 U.S.C. § 636(b)(1).

### A.    Standing

### 1.    Both Defendants - Standing to Neighboring Crofton Residences

Neither Defendant objected to Judge Thalken's conclusion that they lack standing and an expectation of privacy in the residences neighboring McIntyre's Crofton residence. This standing issue relates to the thermal imaging done on neighboring houses for comparison purposes as a result of the second thermal imaging warrant. No evidence was presented with respect to this standing issue.  The Court concludes that the Defendants lack standing to those residences.  Nevertheless, the related issues will be addressed for the sake of argument.

### 2.    Kathi McIntyre - Standing to the Crofton Cabin

Ms. McIntyre argues that Judge Thalken erred in concluding that she did not have standing to the cabin.  She did not allege in her motion or supporting brief that she had standing to the Crofton residence, and she offered no evidence regarding standing at the evidentiary hearing.  She argues that she pays bills for the cabin, stays there, and is married to Mr. McIntyre.  She argues that from "discovery provided" it is clear they the two defendants have joint accounts.  The power company records show David McIntyre as the sole subscriber.  She has failed to meet her burden of establishing standing. *United States v. Perry,* 548 F.3d 688, 691 (8th Cir.), *cert. denied,* 129 S. Ct. 2174 (2009).  Therefore, the

8

Court concludes that Ms. McIntyre lacks standing to contest any searches of the Crofton residence.   Nevertheless, the issues raised by her will be considered for the sake of argument.

### B. Subpoena

The Defendants argue that Judge Thalken erred in concluding that the subpoena used to acquire electrical power records did not violate the Defendants' Fourth Amendment rights and that a warrant was not necessary to obtain McIntyre's electrical use records. Judge Thalken concluded that because David McIntyre had conveyed his utility use information to the power company neither he, nor anyone else, had a reasonable expectation of privacy in that information.  He also concluded that Neb. Rev. Stat. 70-101 (Reissue 2003) (restricting the use of utility service subscriber identifying information) neither applies to utility usage reports nor criminal drug investigations and therefore does not supply an expectation of privacy.   Judge Thalken concluded that the county attorney had authority under Neb. Rev. Stat. § 86-2,112 (Reissue 2008)[3] to obtain the information by subpoena.

This Court has carefully considered the parties' arguments and concluded that because McIntyre provided his utility use information to the power company, a third party, he has no reasonable expectation of privacy in that information.  *United States v. Jacobsen,* 466 U.S. 109 (1984) (quoting *United States v. Miller,* 425 U.S. 435, 443 (1976)); *United States v. Hamilton,* 434 F. Supp. 2d 974, 979 (D. Or. 2006) (a defendant had no expectation of privacy in utility records). The Defendants have cited no authority directly

---

[3]The Findings and Recommendation cites to "Neb. Rev. Stat. § 2,112."  (Filing No. 75, at 8.)

supporting their position.  Mr. McIntyre's argument relying on *Kyllo v. United States,* 533 U.S. 27 (2001), is misplaced, because *Kyllo* regards a warrantless thermal imaging search. Their argument that § 70-101 provides an expectation of privacy by restricting the dissemination to the county attorney of utility subscriber information is deficient because that statute relates only to identifying information and not to usage records.  It follows that the parties' Fourth Amendment rights were not violated by the use of the subpoena. Therefore, a search warrant was not necessary to obtain the records.

The Defendants then argue that the subpoena was deficient because it was not served in compliance with Neb. Rev. Stat. § 25-1273 (2006 Cum. Supp.) (regarding discovery in civil cases) or Nebraska rule of civil discovery 34A.  Defendants argued in their original briefs supporting their motions that the statute and rule governing civil discovery have no application to the contemplated criminal case, and they also argue that technically the subpoena did not fulfill necessary requirements.  In his Findings and Recommendation, Judge Thalken did not address those issues substantively, stating that "[r]egardless of these issues," the county attorney had the necessary subpoena authority under § 86-2,112. Neither party objected to the use of § 86-2,112 nor reargued issues relating to § 25-1273 or Nebraska civil discovery rule 34A.  Therefore, those issues are deemed waived by both parties.  *See* NECrimR 59.2(a).  Moreover, this Court notes that evidence obtained through subpoenas issued under civil discovery statutes has been used in at least one other criminal case.  *See State v. McKinney,* 730 N.W.2d 74, 88-89 (Neb. 2007) (DNA did not fit within the categories of discoverable items listed in Neb. Rev. Stat. § 25-1224 (Reissue 1995) (civil discovery) only because it was not a "book, writing or other thing").

For the reasons stated, the parties' objections relating to the subpoena are denied.

10

### C.   Probable Cause

### 1.   Investigator Sears; Allergic Reaction

Both Defendants argue that Judge Thalken erred in finding that Investigator Sears had an allergic reaction to the smell of raw marijuana inside McIntyre's Fremont residence and near the garage on McIntyre's Crofton property.   Investigator Sears described his symptoms, yet he acknowledged that he had not had a medical diagnosis of an allergy to raw marijuana.   The objection relates to the issue of probable cause, as Investigator Sears's "allergic" reactions were described in all of the search warrant affidavits.

The objection is denied.   The phrase "allergic reaction" is often used generally to describe reactions of the type testified to by Investigator Sears.   In the search warrant affidavits, the use of the word "allergic" is accompanied by a description of Investigator Sears's symptoms.   Even if the words "allergic" and "allergic reaction" were stricken from the affidavit, the affidavit would reflect that when Investigator Sears smelled raw marijuana his throat tightened, his ears and head "plugged up," and a headache followed.   Therefore, a finding of fact that Investigator Sears had an allergic reaction is  immaterial to the probable cause determination.

### D.   Execution of Search Warrants

Defendants argue that the thermal images could only have been obtained by Investigator Kelley trespassing on the McIntyre property.   However, Investigator Kelley testified that he took the images from the street as he was not permitted to enter onto the property.   No contrary evidence has been received.   (Tr. at 80-81.)   The objections are denied.

11

### E.      Exceeding Scope of Second Thermal Imaging Warrant

The Defendants argue that the second thermal imaging warrant, the only warrant sought to obtain information from neighboring residences, did not reflect on its face that information would be obtained regarding neighboring residences.  Therefore, they argue Investigator Kelley's actions in obtaining that information exceeded the scope of the warrant.  However, given Investigator Kelley's additional oral statement to the issuing judge, the execution of the warrant did not exceed its scope.

### F.      Leon

Even assuming for the sake of argument that one or more Fourth Amendment violations occurred, the Court concludes that the good faith exception set out in *United States v. Leon,* 468 U.S. 897 (1984), applies.

### G.      Wong Sun

Because the Court has found no Fourth Amendment violations, the fruit-of-the-poisonous tree analysis under *Wong Sun v. United States,* 371 U.S. 471, 488 (1963), does not apply.  Specifically, the evidence discovered during the execution of the search of the Crofton residence was not a fruit of alleged Fourth Amendment violations regarding the thermal image warrants or the execution of those warrants.

### H.      Conclusion

For the reasons discussed, the Court affirms Judge Thalken's Findings and Recommendation.

For the reasons discussed,

IT IS ORDERED:

1.     The Defendants' objections to the Magistrate Judge's order and findings and recommendation (Filing Nos. 76, 78) are denied;

2.     The Magistrate Judge's oral orders (Filing Nos. 61, 62) denying the Defendants' motion for reconsideration (Filing No. 59) of the Magistrate Judge's previous order (Filing No. 57) denying a *Franks* hearing are affirmed;

3.     The Magistrate Judge's findings and recommendation (Filing No. 75) are adopted in their entirety;

4.     The motions to suppress filed by the Defendant, David McIntyre, (Filing Nos. 15, 34) are denied; and

5.     The motion to suppress filed by the Defendant, Kathi McIntyre, (Filing No. 56) is denied.

DATED this 4th day of February, 2010.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge

13